IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| MELISSA B. KNIBBS, as Personal<br>Representative of the Estate of<br>MICHAEL SCOTT KNIBBS<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY MOMPHARD, JR.<br>Individually and in his<br>official capacity as a Deputy Sheriff<br>of the Macon County Sheriff's<br>Department,<br>ROBERT HOLLAND, in his<br>Official capacity as the Sheriff of<br>Macon County, and<br>WESTERN SURETY COMPANY,<br>a South Dakota Corporation,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil File No. _____ |

## COMPLAINT
### (Jury Trial Demanded)

NOW COMES the Plaintiff, complaining of the Defendants, jointly and severally, and alleges and says as follows:

### I. PARTIES

1.

Plaintiff Melissa Knibbs is the surviving spouse of Michael Knibbs, deceased,

and is the duly appointed Personal Administrator of the Estate of Michael Scott Knibbs, probated in Macon County, North Carolina. (See Exhibit A, Letters of Administration CTA which is incorporated herein).

2.

The potential beneficiaries of the Estate of Michael Knibbs in this action and the relationship of each to the decedent are as follows:

a. Melissa Knibbs, surviving wife;

b. Megan Alexis Knibbs, surviving daughter;

c. Ashley Nicole Coleman, surviving daughter; and

d. Scott Michael Knibbs, surviving minor son.

3.

At all times relevant hereto, and at the time of his death on April 30, 2018, Michael Knibbs (hereinafter "Scott Knibbs" or "Scott") was a citizen and resident of Macon County, North Carolina.

4.

At all times relevant hereto, and at the time of Scott Knibbs' death on April 30, 2018, Plaintiff Melissa Knibbs, Personal Representative of the Estate of Michael Knibbs, was a citizen and resident of Macon County, North Carolina.

5.

At all times relevant hereto, Defendant Robert Holland, sued in his official capacity, was (and remains) the sheriff of Macon County North Carolina, a political subdivision of the State of North Carolina, and is a sworn North Carolina law enforcement officer.

6.

Defendant Robert Holland is a citizen and resident of Macon County,

7.

At all times relevant hereto, Defendant deputy Anthony Momphard Jr., sued in his individual and official capacities, was a deputy employed by the Macon County Sheriff as a sworn North Carolina law enforcement officer and was a resident of Macon County, North Carolina.

8.

At all times relevant hereto, Defendant Momphard was acting within the course and scope of his employment as a deputy employed by the Macon County Sheriff and was acting under the color of state law, ordinance, and/or regulation.

9.

That upon information and belief that the Western Surety Company is the surety on the official bond of Defendant Holland as Sheriff of Macon County, North

Carolina pursuant to N.C.G.S. § 162-8 and § 58-76-5. Plaintiff is informed and believes that Defendants Holland and Momphard are covered by a bond issued by said surety, and that the surety is a corporation authorized to do business in the State of North Carolina. That upon information and belief, it is further alleged that the bond was issued on November 14, 2018 and that the bond number is: 72097674 and that the bond amount is $25,000.00. That upon information and belief, the bond has not been filed with the Clerk of Superior Court of Macon County pursuant to N.C.G.S. §162-9.

10.

Upon information and belief, Defendants are covered by one or more polices of liability insurance purchased pursuant to N.C.G.S. § 153A-435 and\or other applicable state law with respect to all acts and omissions complained of herein, and\or participate in a government risk pool pursuant to N.C.G.S. § 58-23-5, and\or maintain a funded reserve, so, including but not limited to, and to such extent, Defendants have waived any official sovereign, qualified, or governmental immunity to which they might otherwise be entitled in their official capacities.

II. JURISDICTION AND VENUE

11.

This is a civil action arising out of the wrongful death of Scott Knibbs and

asserting civil causes of action against Defendants for wrongful death and violation of Scott Knibbs' rights under the United States Constitution, specifically the Second, Fourth and Fourteenth Amendments thereto; violations of 42 U.S.C. §§ 1983, 1988; and violations of North Carolina Statutes and common law and the North Carolina Constitution (to include any one or more violations).

12.

This action seeks monetary damages against Defendants in excess of $75,000.00, exclusive of interest, attorney's fees, and costs.

13.

This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiff's § 1983 claim.

14.

This Court has supplemental jurisdiction over Plaintiff's state court claims under 28 U.S.C. § 1367 because these claims are so related to Plaintiff's § 1983 claims that they form part of the same case or controversy.

15.

Venue is proper in this Court under 28 U.S.C. § 1391(b) because the parties reside, or, at the time the events took place, resided in this judicial district, and the events giving rise to the claims asserted herein occurred in this district.

16.

Upon information and belief, each Defendant's potential governmental immunity(ies), if applicable, has been waived by either the purchase of liability insurance, surety bond, and\or participation in the statutory risk pool.

## III. FACTUAL ALLEGATIONS

17.

On the evening of April 29th through April 30th, 2018, Michael Scott Knibbs ("Scott") was at home with his wife, Missy, his daughter, Megan (age 21), his son Scott (age 13), and grandchild, Levi (age 5 months), at their residence at 164 Pheasant Drive (hereinafter "Knibbs' residence").

18.

On information and belief, at the approximately the same time, Scott's neighbors were having a party at their house (hereinafter "neighbors' house") directly up the road from the Knibbs' residence.

19.

The Knibbs' residence and the neighbors' house are the only two homes on a narrow country dirt road which joins a state-maintained paved road approximately 100 yards below the Knibbs' residence. The homes are located in a densely-wooded, rural area of Macon County. The only access to the neighbors' house is to travel

along this narrow dirt road past the Knibbs' residence.

20.

At approximately 10 p.m., one of the visitors to the neighbors' party mistakenly pulled into the Knibbs' residence's driveway directly next to their home within just a few feet of the Knibbs' residence. Scott had to direct this unwanted visitor to leave his property.

21.

That words were exchanged between the neighbors' party-guest and Scott as Scott informed this partier that there was no party at the Knibbs' residence, and this partier needed to leave the premises immediately.

22.

Since the neighbors in question had rented this house, there had been other prior occasions with unwanted visitors attempting to locate the neighbors' house and entering the Knibbs' premises, and Scott insisting they leave his property.

23.

The Knibbs family had been having problems with the neighbors and their guests driving too fast up and down the road that the two residences shared. Visitors going to visit or party at the neighbors' house passed within feet of the Knibbs' residence on the narrow one-lane shared narrow dirt road on their way to the

neighbors' house, which was further up the dirt road.

24.

The Knibbs' children and grandchildren would play out in front of the Knibbs' residence, and Scott was worried that a speeding car would injure one of his family members.

25.

Upon information and belief, Scott had on one or more previous occasions placed wooden boards in the road to act as makeshift "speed-bumps," in an attempt to force the neighbors and their guests to drive slower past the Knibbs' residence for safety reasons.

26.

For the several months prior to April 29, 2018, there had been a large volume of traffic traveling up and down the road, and it made Scott worried for the safety of his family.

27.

Upon information and belief, during the late evening hours of April 29, 2018, Scott placed one or more boards in the road to act as makeshift "speed-bumps" in response to the party that was occurring at the neighbor's residence and the unwelcome visitor who had pulled in the Knibbs driveway looking for the party

house who Scott directed to leave his premises.

28.

At approximately 11:40 p.m., one of the neighbors living at 224 Pheasant Drive called emergency dispatch services and reported that someone had placed boards in the road, that there were nails in the board, and that his guests could not leave.

29.

Upon information and belief, while there were nails in the boards across the roads, the nails were hammered down and embedded into the wood, such that the nails would not cause damage to any cars that drove over them. The purpose of the boards was to slow down traffic from the neighbor's house, not cause property damage.

30.

The neighbor stated that this was "not an emergency," and that he needed "someone to come out here and get him to move [the boards], or something."

31.

The emergency dispatcher reported that "the caller advised that a problem with a neighbor, neighbor had put—" [boards in the road].

32.

Upon information and belief, Defendant deputy Anthony Momphard Jr. ("Momphard") was the deputy dispatched to respond to the neighbor's 911 call.

33.

According to the dispatch logs, Momphard arrived at Pheasant Drive at approximately 11:55 p.m.

34.

Momphard parked his squad car on the shared dirt roadway before even reaching the Knibbs' residence, out of sight of the Knibbs' front door and Scott's bedroom.

35.

Momphard did not trigger any sirens or horn to announce his arrival on Pheasant Drive.

36.

Momphard did not even activate his patrol car blue lights.

37.

At the time of Momphard's arrival on Pheasant Drive, no member of the Knibbs' residence was outside.

38.

Upon information and belief, the inside of the Knibbs' residence was dark, no signs of movement were visible from outside, and there was no artificial outdoor lighting in the yard or curtilage area of the home.

39.

Momphard, without making his presence known to the Knibbs, walked past the Knibbs' residence and met with the neighbor and the neighbors' guests at the party house.

40.

Momphard, who upon information and belief described the situation as a "right of way dispute," watched the neighbors and/or their guests remove the boards from Pheasant Drive, which took just a few seconds to accomplish. Once the boards were removed from the dirt roadway there was no longer any real or imagined impediment to visitors or residents of the neighbors' house traveling up and down the dirt roadway.

41.

Upon information and belief, at no point in time during Momphard's conversation with the neighbors and their party guests had Momphard seen movement from inside the Knibbs' residence.

42.

Upon information and belief, Momphard, without regard for the late hour or the fact that the entirety of the dispute was, as he described it, a civil "right of way dispute," decided to roust the Knibbs family out of bed.

43.

Upon information and belief, Momphard, despite the late hour and the fact that most, if not all, of the lights were out in the Knibbs' residence, made no effort to make his official presence as a law enforcement officer known.

44.

Momphard did not move his squad car within line-of-sight of the Knibbs front door.

45.

Momphard did not activate his blue lights on his squad car to announce his presence.

46.

Momphard did not activate his siren or horn to announce his presence to the Knibbs' residence.

47.

Momphard did not attempt to call the Knibbs' residence to let them know of

his impending intrusion onto their property.

48.

Upon information and belief, Momphard did not adequately verbally announce his presence as he approached the Knibbs' residence.

49.

Momphard made no appreciable effort to alert any member of the Knibbs' residence to his presence, despite the late hour and lack of movement from inside the house.

50.

Momphard decided to approach the Knibbs' residence in such a way that the Knibbs family was unaware of Momphard's approach.

51.

By acting in this manner, Momphard recklessly created a dangerous situation by failing to make his presence known as a law enforcement officer.

52.

Momphard, as a deputy in Macon County, knew or should have known most homeowners in Macon County keep a firearm for the protection of their family inside their homes.

53.

The Macon County Sheriff's Office had actual knowledge that Scott Knibbs owned a firearm and would answer the door with a firearm in-hand when there was an unexpected visitor at night.

54.

The Sheriff's Office, on a prior occasion when they were looking for one of Scott's neighbors, stopped by the Knibbs' residence unannounced.

55.

On this prior occasion, Scott answered the door with a firearm in-hand.

56.

On this prior occasion, Scott immediately placed the weapon down upon recognition that it was deputies who had come to his house. There was no animosity or confrontation between Scott and the deputies on this occasion.

57.

Scott had no animosity towards law enforcement, and had only recently before the events described herein completed a local law enforcement training opportunity for church members to act as armed security guards for their churches.

58.

Scott was a supporter of law enforcement officers in the community and the

rule of law in Macon County.

59.

Momphard had brought one of the neighbors from the party house down the dirt roadway to the Knibbs' residence in the middle of the night to confront Scott.

60.

After stalking unannounced in the middle of the night to the Knibbs residence, Defendant Momphard walked onto the Knibbs' residence front porch, still talking to one or more of the neighbors and their party guests.

61.

Residents of the Knibbs' residence would have been able to hear the party house neighbor speaking outside their front door with other unknown men.

62.

Defendant Momphard did not attempt to call the Knibbs' residence or use his patrol cars lights or sirens to alert the Knibbs family of his presence.

63.

Scott had a constitutional right to bear arms for the safety of himself and his family within the confines of his own home and\or to protect himself from harm.

64.

No warrant had been issued for Scott's arrest or anyone else located within

the Knibbs residence.

65.

There was no basis in probable cause for the arrest of any member of the Knibbs' residence.

66.

Defendant Momphard did not have a search warrant for the Knibbs residence or its curtilage.

67.

There were no exigent circumstances that required a late-night, unannounced visit to the Knibbs property by Momphard.

68.

Defendant Momphard admitted that the disagreement between Scott and his neighbors amounted to a civil "right of way dispute."

69.

Momphard could have just as easily waited until daylight hours to address the situation, should law enforcement intervention even have been somehow appropriate under the circumstances.

70.

A civil "right of way dispute" would necessarily not involve criminal conduct

and would not be capable of resolution by Sheriff's deputy approaching a darkened residence near midnight unannounced.

71.

Upon information and belief, Scott, who was in his bedroom with his wife, Melissa Knibbs, was either asleep or almost asleep when he heard the commotion outside on the front porch of his home.

72.

Upon information and belief, Scott did not hear or did not understand and appreciate under the conditions then existing that shouting from outside the residence was actually an announcement of the presence of a sworn law enforcement officer.

73.

Upon information and belief Defendant Momphard brought one of the neighbors from the party house with him to roust Scott out of his darkened home and communicated verbally with the neighbor back and forth outside of Scott's bedroom window shortly before the shooting described herein.

74.

Upon information and belief Scott heard one or more of the neighbors outside his bedroom window moments before the shooting described herein.

75.

Scott, fearing for the safety of his family and\or himself due to the party occurring up the road and the earlier confrontation with the uninvited lost party guest picked up his shotgun before exiting his bedroom to answer the door.

76.

Most of the lights in the Knibbs' residence were off when Scott went to answer the door, and he could not see who was standing on his front porch.

77.

Defendant Momphard was standing on the front porch of Scott's house, shining his flashlight through the window of the Knibbs' residence, effectively blinding anyone coming to answer the door.

78.

Upon information and belief, Momphard was acting in a threatening manner while standing on the front porch of the Knibbs' residence, after failing to adequately identify himself.

79.

The front door of the Knibbs' residence had been locked earlier that evening by Megan, as she was concerned about her father's confrontation with the neighbors'

party guest.

80.

Momphard did not adequately identify himself as a law enforcement officer while standing on the front porch of the Knibbs' residence with his flashlight aimed through the front porch window of the house.

81.

As soon as Scott rounded the corner from his bedroom to the living room to answer the door, Defendant Momphard opened fire through the front window of the Knibbs' residence.

82.

Defendant Momphard shot Scott multiple times while Scott was inside his own home, through the closed glass front window of Knibbs' residence as Momphard stood outside on the porch.

83.

Upon information and belief at no point did Scott point his shotgun at Defendant Momphard.

84.

At no point did Scott otherwise verbally or physically threaten Momphard, who was standing shouting on his front porch with a flashlight pointed through the

front window into the Knibbs' residence.

85.

Defendant Momphard then broke open the door to the Knibbs' residence and stood over Scott, gun still drawn.

86.

As Scott lay dying on his living room floor, Plaintiff Melissa Knibbs ran crying into the living room.

87.

Defendant Momphard pointed his pistol at Melissa and refused to allow her to give aid to her dying husband.

88.

Momphard directed Melissa and Megan into a corner. The only thing they could do was watch helplessly as Scott bled out and died on his own living room floor.

89.

Defendant Momphard made no efforts to render medical aid to Scott. There was no attempt by the Defendant to stop the bleeding or make Scott more comfortable.

90.

Defendant Momphard used inappropriate, unwarranted, and unjustified force against Scott when Defendant Momphard shot Scott through the closed porch window of Scott's house for the sole reason that Scott had a gun in his hands, where he was legally allowed to possess a firearm pursuant to his Second Amendment rights in his own home; his castle.

91.

Defendant Momphard violated Scott Knibbs Fourth Amendment Rights against unreasonable searches and seizures by stalking Scott Knibbs in his own home, by shooting through the window of Scott's home, and by entering Scott's home without a warrant with both with his bullets and his person.

92.

Defendant Momphard failed to exercise reasonable care and due diligence as a law enforcement officer by failing to adequately announce his presence in a manner that would give Scott reasonable notice that Defendant Momphard was a deputy when:

> a. Momphard failed to park his police car in line of sight of the Knibbs' front door;
>
> b. failed to sound his police car's horn or siren;
>
> c. failed to activate his police car's blue lights in line of sight of the

Knibbs' front porch;

d. failed to attempt to contact the residents of the Knibbs' residence by telephone to see if they were awake at the late hour;

e. failed to wait until daylight hours to address a civil "right of way dispute;

f. failed to retreat in the face of Scott's constitutional right to own and possess a firearm inside his home for the safety of himself and his family; and

g. Any other way that will be revealed through discovery.

## 93.

Defendant Momphard's reckless and wanton conduct unreasonably created the dangerous situation that directly and proximately led to Defendant Momphard's use of deadly force on Scott Knibbs.

## 94.

Defendant Momphard failed to observe law enforcement policy and procedures regarding the correct manner to approach a home late at night, including but not limited to the proper methods for announcing the presence of a law enforcement officer through the use of a police car siren or lights or horn, or any other reasonable method to announce Momphard's presence without rousting Scott out of bed by causing a commotion on the front porch of Knibbs' residence.

Scott Knibbs' constitutional rights under the Second, Fourth and Fourteenth Amendments to not be shot inside the living room of his own home by a law enforcement officer stalking him from outside on his own porch were clearly established at the time of the shooting.

## COUNT I - VIOLATION OF 42 USC § 1983
## (POLICY, CUSTOM, OR USAGE OF MACON COUNTY SHERIFF)

Plaintiff repeats and incorporates the allegations contained in paragraphs 1-95 as if fully stated herein.

96.

This is an action for damages against Defendant Robert Holland, in his official capacity as the Sheriff of Macon County, for the deprivation of Scott Knibbs' Second, Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

97.

At all times material hereto, the employees, agents, and/or officers of Sheriff Holland, including the officer named as defendant herein, were acting under the color of state law and pursuant to the policy, custom and/or usage of the Macon County Sheriff.

98.

Upon information and belief, the Macon County Sheriff created and allowed

a policy, custom or usage whereby its deputies intruded onto individual's property without giving adequate notice to the individual that the intrusion was performed by a sheriff's deputy, used excessive force after intruding onto a private citizens' property, and\or failed to give proper medical treatment to victims after shooting them inside their own house.

99.

Upon information and belief, the Macon County Sheriff also created and allowed a policy, custom, or usage whereby its law enforcement officers failed to adequately supervise, discipline, and train his employees, agents, and officers, including the officer named as a defendant herein, in the appropriate use of force and appropriate manner to approach a private residence in the middle of the night, if ever, for a mere civil dispute.

100.

Upon information and belief, the Macon County Sheriff, through its policy, custom, or usage also hired officers who were substandard and who were not properly trained and disciplined, including Defendant Momphard who lacked sufficient tactics training on the use of firearms including, but not limited to, defensive tactics.

101.

The Macon County Sheriff ratified the misconduct of Defendant Momphard by going on television to endorse the behavior of Defendant Momphard the morning after Momphard killed Scott Knibbs, by making other public statements to the press, by releasing press releases endorsing the actions of Defendant Momphard, and by failing to discipline Defendant Momphard.

102.

The failure of the Macon County Sheriff to properly supervise officers; properly discipline officers; properly train officers; properly hire and retain officers; and provide proper medical treatment to individuals in need of such treatment once in custody constitutes deliberate indifference, willful conduct, and knowing conduct towards the public in general and specifically towards Scott Knibbs.

103.

The employees, agents and officers of the Macon County Sheriff, including Defendant Momphard, through their above-described actions, deprived Scott Knibbs of his rights, privileges and immunities secured by the Fourth Amendment of the Constitution of the United States including the right to be secure in their persons against unreasonable seizures including the use of excessive force.

104.

As a direct and proximate foreseeable result of the Fourth Amendment violations and misconduct of the employees, agents and law enforcement officers of the Macon County Sheriff, as set forth herein, Scott Knibbs suffered injuries that caused his death.

105.

The employees, agents and officers of the Macon County Sheriff, including the named defendant deputy, through their above-described actions, deprived Scott Knibbs of his rights secured by the Second Amendment of the Constitution of the United States including the right to bear arms inside his own residence for the protection of himself and his family.

106.

As a direct and proximate foreseeable result of the Second Amendment violations and misconduct of the employees, agents and law enforcement officers of the Macon County Sheriff, as set forth herein, Scott Knibbs suffered injuries that caused his death.

107.

The employees, agents and law enforcement officers of the Macon County Sheriff, through the actions described above, deprived Scott Knibbs of his rights,

privileges and immunities secured by the Fourteenth Amendment of the Constitution of the United States, including the right to liberty, the right to substantive and procedural due process, the right to be free from unlawful detention and imprisonment, the right to be free from unlawful seizure, and those fundamental rights of due process, liberty and life as guaranteed by the Constitution.

108.

As a direct, proximate and foreseeable result of the Fourteenth Amendment violations and misconduct of the employees, agents and law enforcement officers of the Macon County Sheriff, as set forth above, Scott Knibbs suffered injuries that caused his death.

109.

As a direct and proximate result of the above-mentioned violations of Scott Knibbs' constitutional rights in accordance with the policy, custom or usage of the Macon County Sheriff, Scott Knibbs suffered physical injury, pain, suffering, emotional distress, disability and death.

110.

As a result of Scott Knibbs' injury and death, Plaintiff is entitled to recover all damages allowable for violation of 42 U.S.C. § 1983 including compensatory damages, all costs incurred in prosecuting this action and attorney's fees pursuant to

42 U.S.C. § 1988.

## COUNT II – VIOLATION OF 42 U.S.C. § 1983
## AGAINST DEFENDANT MOMPHARD

Plaintiff repeats and incorporates the allegations contained in paragraphs 1-110 as if fully stated herein.

### 111.

This is an action for damages against Defendant deputy Anthony Momphard, individually and in his official capacity as a deputy employed by the Macon County Sheriff, for the deprivation of Scott Knibbs' Second, Fourth, and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

### 112.

At all times material hereto, Defendant Momphard was acting under the color of state law and pursuant to the policy, custom, and/or usage of the Macon County Sheriff.

### 113.

Defendant Momphard, through the actions described above, deprived Scott Knibbs of his rights, privileges and immunities secured by the Fourth Amendment of the Constitution of the United States including the right to be free from unreasonable seizures and excessive force against his person.

## 114.

Defendant Momphard, through the actions described above, deprived Scott Knibbs of his rights secured by the Second Amendment of the Constitution of the United States including the right to bear arms within his own home for the protection of himself and his family.

## 115.

Defendant Momphard also failed to provide medical care to Scott Knibbs and failed to provide adequate notice of Defendant Momphard's intrusion onto the Knibbs' family property such that Scott Knibbs would have had the opportunity to comprehend that the intruder was a law enforcement officer.

## 116.

Defendant Momphard's reckless conduct unreasonably created the dangerous situation leading to Defendant Momphard's unlawful shooting of Scott Knibbs.

## 117.

As a direct and proximate foreseeable result of the violations of the Second and Fourth Amendments and the misconduct of Defendant Momphard, as set forth above, Scott Knibbs suffered injuries that caused his death.

## 118.

Defendant Momphard, through the actions described above, deprived Scott

Knibbs of his rights, privileges and immunities secured by the Fourteenth Amendment of the Constitution of the United States, including the right to liberty, the right to substantive and procedural due process, the right to be free from unlawful detention and imprisonment, the right to be free from unlawful seizure, and those fundamental rights of due process, liberty and life as guaranteed by the Constitution.

119.

As a direct and proximate foreseeable result of the violations of the Fourteenth Amendment and the misconduct of Defendant Momphard, as set forth above, Scott Knibbs suffered injuries that caused his death.

120.

As a direct and proximate result of the above-mentioned violations of Scott Knibbs' constitutional rights, Scott Knibbs suffered physical injury, pain, suffering, emotional distress, disability and death.

121.

As a result of Scott Knibbs' injury and death, Plaintiff is entitled to recover all damages allowable for violation of 42 U.S.C. § 1983 including compensatory damages, all costs incurred in prosecuting this action and attorney's fees pursuant to 42 U.S.C. § 1988.

122.

Plaintiff is also seeking punitive damages against Defendant Momphard because the conduct set forth above constitutes deliberate indifference, willful conduct, intentional conduct, and callous disregard of the rights of the public in general and specifically Scott Knibbs and this conduct caused injuries resulting in his death.

## COUNT III – WRONGFUL DEATH ACTION AGAINST DEFENDANT HOLLAND PURSUANT TO NORTH CAROLINA LAW

Plaintiff repeats and incorporates the allegations contained in paragraphs 1-122 as if fully stated herein.

123.

This is an action for damages against Defendant Robert Holland, in his official capacity as the Sheriff of Macon County, North Carolina, for the wrongful death of Scott Knibbs.

124.

As a direct and proximate result of the negligent and\or intentional misconduct of Defendant Momphard as described above, including the use of excessive force and failure to follow policies, procedures, and/or customs regarding the correct method to approach a private citizen's residence in the middle of the night, Scott Knibbs suffered fatal injuries.

125.

Defendant Holland is vicariously liable for the negligent and\or intentional misconduct of Defendant Momphard, its employees, agents, and law enforcement officers pursuant to North Carolina law and the common law of respondeat superior.

126.

As a direct and proximate result of the negligent and\or reckless and\or intentional misconduct of Defendant Momphard, Scott Knibbs died, and Defendant Holland, in his official capacity as the Sheriff of Macon County, is liable for all those damages recoverable by North Carolina state law for wrongful death.

127.

That pursuant to North Carolina General Statutes, §14-51.2 and 14-51.3, Scott Knibbs would have been afforded the protections guaranteed to him pursuant to North Carolina General Statutes as set forth above.

128.

That Scott Knibbs was within the safety of his own home with his family and children inside and was a lawful occupant of his residence and that he had a reasonable fear of imminent bodily harm, injury or death to himself or another of his family members when the shooting occurred.

129.

There was no indication that Scott Knibbs raised his firearm and aimed at Deputy Momphard, shot or discharged his firearm, or in any way threatened harm against the law enforcement officer who at the time of the shooting, was not known to Scott Knibbs as a law enforcement officer as he failed to adequately announce his presence.

130.

At all times, Scott Knibbs was a lawful occupant of his own home and that Deputy Momphard had himself violated N.C.G.S. §14-51.2(e) in that he had failed to identify himself as a law enforcement officer, and Scott Knibbs, upon information and belief, did not believe Deputy Momphard was a law enforcement officer, and further that no reasonable person based upon the facts and circumstances, would have known that the person approaching the home was a law enforcement officer in lawful execution of his duties.

131.

That pursuant to N.C.G.S. §14-51.3, the actions of Scott Knibbs were justified if he had used deadly force, which Plaintiff contends no deadly force was implemented by Scott Knibbs, but rather a precautionary and reasonable response of arming oneself to respond to the door in the middle of the night, after conflict with

neighbors who regularly were intoxicated with a history of high levels of conflict in their interactions.

132.

As a direct and proximate result of the negligent and intentional misconduct of Defendant Momphard, for which Defendant Holland in his official capacity is vicariously liable, Scott Knibbs died, and Defendant Holland is liable for all those damages recoverable by North Carolina state law for wrongful death.

## COUNT IV – WRONGFUL DEATH ACTION AGAINST DEFENDANT MOMPHARD PURSUANT TO NORTH CAROLINA STATE LAW

Plaintiff repeats and incorporates the allegations contained in paragraphs 1-132 as if fully stated herein.

133.

This is an action for damages against Defendant Anthony Momphard, in his individual and official capacities, for the wrongful death of Scott Knibbs.

134.

At all times material hereto, Defendant Momphard was acting under the color of state law and under the color of his authority as a law enforcement officer.

135.

As a direct and proximate result of the misconduct of Defendant Momphard, as described above, Scott Knibbs suffered fatal injuries.

136.

Defendant Momphard's misconduct was committed in bad faith or with a malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

137.

As a direct and proximate result of the negligent and intentional misconduct of Defendant Momphard, Scott Knibbs died, and Defendant Momphard is liable for all those damages recoverable by North Carolina state law for wrongful death.

## COUNT V – CONSTITUTIONAL VIOLATION ACTION AGAINST DEFENDANT ROBERT HOLLAND IN HIS OFFICIAL CAPACITY

Plaintiff repeats and incorporates the allegations contained in paragraphs 1-137 as if fully stated herein.

138.

In the alternative, should the Court determine that Defendant Holland is entitled to governmental immunity or if this Court otherwise determines there is an absence of an adequate state court remedy on Plaintiff's state wrongful death claim, this is an action for damages against Defendant Robert Holland, in his official capacity as the Sheriff of Macon County, for the deprivation of Scott Knibbs' rights under the North Carolina Constitution, including but not limited to Art. I of the North Carolina Constitution, Sections 1, 19, 21, 23, and 30.

139.

At all times material hereto, the employees, agents, and/or officers of Sheriff Holland, including the officer named as defendant herein, were acting under the color of state law and pursuant to the policy, custom and/or usage of the Macon County Sheriff.

140.

Upon information and belief the Macon County Sheriff created and allowed a policy, custom or usage whereby its law enforcement officers intruded onto an individual's property without giving adequate notice to the individual that the intrusion was performed by a sheriff's deputy, used excessive force after intruding onto a private citizens' property, and failed to give proper medical treatment to victims after shooting them inside their own house.

141.

Upon information and belief, the Macon County Sheriff also created and allowed a policy, custom, or usage whereby its law enforcement officers failed to adequate supervise, discipline, and train his employees, agents, and officers, including the officer named as a defendant herein, in the appropriate use of force and appropriate manner to approach a private residence in the middle of the night.

142.

Upon information and belief, the Macon County Sheriff, through its policy, custom, or usage also hired officers who were substandard and who were not properly trained and disciplined, including Defendant Momphard who lacked sufficient defensive tactics training on the use of firearms.

143.

The Macon County Sheriff ratified the misconduct of Defendant Momphard by going on television to endorse the behavior of Defendant Momphard the morning after Momphard killed Scott Knibbs, by making other public statements to the press, by releasing press releases endorsing the actions of Defendant Momphard, and by failing to discipline Defendant Momphard.

144.

The failure of the Macon County Sheriff to properly supervise officers; properly discipline officers; properly train officers; properly hire and retain officers; and provide proper medical treatment to suspects in need of such treatment once in custody constitutes deliberate indifference, willful conduct, and knowing conduct towards the public in general and specifically towards Scott Knibbs.

145.

The employees, agents and officers of the Macon County Sheriff, including

the named defendant law enforcement officers, through their above-described actions, deprived Scott Knibbs of his rights, privileges and immunities secured by the North Carolina Constitution including but not limited to the right to life, liberty, pursuit of happiness, equal protection, and the right to bear arms.

146.

As a direct and proximate foreseeable result of the North Carolina Constitutional violations and misconduct of the employees, agents and law enforcement officers of the Macon County Sheriff, as set forth herein, Scott Knibbs suffered injuries that caused his death.

147.

The employees, agents and law enforcement officers of the Macon County Sheriff, through the actions described above, deprived Scott Knibbs of his rights, privileges and immunities secured by Section I of the Constitution of North Carolina, including the right to liberty, the right to substantive and procedural due process, including but not limited to the right to life, liberty, pursuit of happiness, equal protection, and the right to bear arms.

148.

As a direct, proximate and foreseeable result of the North Carolina Constitutional violations and misconduct of the employees, agents and law

enforcement officers of the Macon County Sheriff, as set forth above, Scott Knibbs suffered injuries that caused his death.

149.

As a direct and proximate result of the above-mentioned violations of Scott Knibbs' constitutional rights in accordance with the policy, custom or usage of the Macon County Sheriff, Scott Knibbs suffered physical injury, pain, suffering, emotional distress, disability and death.

150.

As a result of Scott Knibbs' injury and death, Plaintiff is entitled to recover of Defendant Holland, acting in his official capacity, all damages allowable for violation of the North Carolina Constitution pursuant to *Corum v. University of North Carolina Through Bd. Of Governors*, 330 N.C. 761 (1992).

## COUNT VI – NORTH CAROLINA CONSTITUTIONAL VIOLATION AGAINST DEFENDANT ANTHONY MOMPHARD

Plaintiff repeats and incorporates the allegations contained in paragraphs 1-150 as if fully stated herein.

151.

In the alternative, should the Court determine that Defendant Holland is entitled to governmental immunity or if this Court otherwise determines there is an absence of an adequate state court remedy on Plaintiff's state wrongful death claim,

this is an action for damages against Defendant deputy Anthony Momphard for the deprivation of Scott Knibbs' rights under the North Carolina Constitution, including, but not limited to, Art. I of the North Carolina Constitution, Sections 1, 19, 21, 23, and 30.

152.

At all times material hereto, Defendant Momphard was acting under the color of state law and pursuant to the policy, custom, and/or usage of the Macon County Sheriff.

153.

Defendant Momphard, through the actions described above, deprived Scott Knibbs of his of his rights, privileges and immunities secured by the North Carolina Constitution including but not limited to the right to life, liberty, pursuit of happiness, equal protection, and the right to bear arms.

154.

Defendant Momphard also failed to provide medical care to Scott Knibbs and failed to provide adequate notice of Defendant Momphard's intrusion onto the Knibbs' family property such that Scott Knibbs would have had the opportunity to comprehend that the intruder was a law enforcement officer.

155.

As a direct and proximate foreseeable result of the violations of the North Carolina Constitution and the misconduct of Defendant Momphard, as set forth above, Scott Knibbs suffered injuries that caused his death.

156.

Defendant Momphard, through the actions described above, deprived Scott Knibbs of his of his rights, privileges and immunities secured by the North Carolina Constitution including but not limited to the right to life, liberty, pursuit of happiness, equal protection, and the right to bear arms.

157.

As a direct and proximate foreseeable result of the violations of the North Carolina Constitution and the misconduct of Defendant Momphard, as set forth above, Scott Knibbs suffered injuries that caused his death.

158.

As a direct and proximate result of the above-mentioned violations of Scott Knibbs' North Carolina Constitutional rights, Scott Knibbs suffered physical injury, pain, suffering, emotional distress, disability and death.

159.

As a result of Scott Knibbs' injury and death, Plaintiff is entitled to recover

from Defendant Momphard all damages allowable for violation of the North Carolina Constitution pursuant to *Corum v. University of North Carolina Through Bd. Of Governors*, 330 N.C. 761 (1992).

## COUNT VII – PUNITIVE DAMAGES PURSUANT TO NORTH CAROLINA LAW AGAINST DEFENDANT MOMPHARD

Plaintiff repeats and incorporates the allegations contained in paragraphs 1-159 as if fully stated herein.

160.

Plaintiff is also seeking punitive damages against Defendant Momphard in his individual capacity because the conduct set forth above constitutes deliberate indifference, willful or wanton conduct, and intentional conduct towards the public in general and specifically Scott Knibbs and this conduct caused injuries resulting in his death.

161.

That as set forth in Count IV and as contained within all preceding paragraphs as incorporated within Count VII, Plaintiff alleges that Defendant Momphard's conduct as set forth and contained within the factual allegations as set forth in Section III above constitute deliberate indifference, willful or wanton injury, maliciousness and/or gross negligence.

162.

Specific conduct of Defendant Momphard constitutes such deliberate indifference, willful or wanton injury, maliciousness and/or gross negligence in that:

a. he failed to activate his blue emergency lights upon arrival or at any time prior to the shooting;

b. he failed to call the occupants of the household;

c. he failed to announce his presence and adequately notify occupants of the Knibbs' residence that he was a sworn deputy;

d. he lacked any probable cause to arrest or detain Scott;

e. he did not have a search or arrest warrant;

f. upon information and belief he drew his weapon prior to Scott coming to the door; and

g. he shot Scott multiple times in his own home while effectively blinding him with a flashlight while Scott was at all times acting in a reasonable and lawful manner.

163.

That pursuant to North Carolina General Statutes, N.C.G.S. § 28A-18-2, punitive damages are authorized pursuant to Chapter 1D of the North Carolina General Statutes as the decedent could have recovered had he survived, and punitive damages for wrongfully causing the death of the decedent through maliciousness, willful or wanton injury, or gross negligence are available relief to the Plaintiff.

164.

That as a result of the actions taken by Momphard as described above, Plaintiff is entitled to punitive damages in an amount to be determined by a jury pursuant to Chapter 1D of the North Carolina General Statutes.

WHEREFORE, the Plaintiff prays the Court to issue a judgment in the Plaintiff's favor and against the Defendants, jointly and severally, as follows:

1.  That the Plaintiff have and recover of Defendant Holland, in his official capacity, all damages allowed by law including compensatory damages, costs, and attorney fees pursuant to Count I.

2.  That the Plaintiff have and recover of Defendant Momphard, in his individual and official capacities, all damages allowed by law including compensatory damages, punitive damages, costs, and attorney fees pursuant to Count II.

3.  That the Plaintiff have and recover of Defendant Holland, in his official capacity, all damages allowed by law including compensatory damages, costs, and attorney fees pursuant to Count III.

4.  That the Plaintiff have and recover of Defendant Momphard, in his individual and official capacities, all damages allowed by law including

compensatory damages, costs, and attorney fees pursuant to Count IV.

5.    That the Plaintiff have and recover of Defendant Holland, in his official capacity, all damages allowed by law including compensatory damages, costs, and attorney fees pursuant to Count V.

6.    That the Plaintiff have and recover of Defendant Momphard, in his individual and official capacities, all damages allowed by law including compensatory damages, costs, and attorney fees pursuant to Count VI.

7.    That the Plaintiff have and recover of Defendant Momphard, in his individual capacity, all damages allowed by law including punitive damages pursuant to Chapter 1D and attorney fees pursuant to Count VII.

8.    For a trial by jury on all Counts.

9.    For other such and further relief as the Court deems just and proper.

This the 16th day of April, 2019.

s/Mark R. Melrose
NC State Bar No.: 17175
Adam R. Melrose
NC State Bar No.: 50873
Attorneys for Plaintiff
Melrose Law, PLLC
Post Office Box 567
Waynesville, North Carolina 28786
(828) 452-3141 Telephone

(828) 246-6221 Facsimile
melrose@mountainverdict.com

s/Joshua D. Nielsen
NC State Bar No.: 44660
Attorney for Plaintiff
Nielsen Law, PLLC
413 Walnut Street
Waynesville, NC 28786
(828) 246-9360 Telephone
(828) 229-7255
josh@nielsen-legal.com